IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JEROME BOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 2:12cv879-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiff, Jerome Boyd, applied for disability insurance benefits and supplemental security income ("SSI"). His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled at any time through the date of the decision. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

1

court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

3

experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.     ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-nine years old at the time he filed his application and had a limited education. Tr. 38. Plaintiff's past relevant work was as a "concrete finisher" and a "construction laborer." *Id*. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since August 1, 2009, the alleged onset date." (Step 1) Tr. 24. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "hypertension and mild degenerative changes of the knee." *Id*. The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Step 3) Tr. 26. Next, the ALJ found that Plaintiff has the RFC to perform light work with a few additional restrictions. *Id*. The ALJ then concluded that Plaintiff "is unable to perform any past relevant work." (Step 4) Tr. 37. At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 38. The ALJ identified the following occupations as examples: "mold filler," "utility hand" and "vacuum tender." Tr. 39. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 1, 2009, through the date of this decision." *Id.*

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision: (1) whether "the ALJ's [RFC] findings are [] based on substantial evidence"; and (2) whether "the ALJ erred in failing to consider physical and mental conditions in combination." Pl.'s Br. (Doc. 13) at 7-13. The court will address each argument below.

## V. DISCUSSION

### A. *The RFC Findings*

Plaintiff asserts that the ALJ's RFC findings are not supported by substantial evidence. It appears Plaintiff's argument is two-fold. First, Plaintiff appears to argue that the ALJ did not properly consider the treating source's opinion.[5] Pl.'s Br. (Doc. 13) at 7-9. Second, Plaintiff asserts that the mental RFC findings were flawed because the ALJ did not "state with particularity" the amount of time Plaintiff was capable of spending with each activity. Pl.'s Br. (Doc. 13) at 9. The court finds both arguments to be without merit.

To the extent that Plaintiff is arguing that the ALJ did not properly consider the opinion of Dr. Yearwood, Plaintiff's treating source, the court disagrees. An ALJ normally must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *See Phillips*, 357 F.3d at 1240.

---

[5] Defendant states in her brief that "Plaintiff mentions Dr. Yearwood's opinion, noting that the ALJ accepted portions of the opinion and rejected others, but does not allege the ALJ erred in assigning weigh[t] to the opinion." Def.'s Br. (Doc. 14) at 6. While the court tends to agree with

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41.  Further, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight").

Here, the ALJ did consider Dr. Yearwood's opinion.  In fact, the ALJ expressly stated "I have generally accepted Dr. Yearwood's opinions regarding physical capacity and fatigue/weakness." Tr. 34.  The ALJ did find, contrary to Dr. Yearwood's opinion of Plaintiff's physical capacities, that Plaintiff was capable of working an eight-hour workday; it was Dr. Yearwood's opinion that Plaintiff could work seven hours per day. Tr. 34.  The ALJ also rejected Dr. Yearwood's "opinions as set forth in his responses to the 'Clinical Assessment of Pain' questionnaire."  Tr. 34.  To the extent the ALJ rejected such portions of Dr. Yearwood's opinion, the ALJ gave good cause.  Specifically, the ALJ stated,

> I find that there is nothing in Dr. Yearwood's records to support a finding that [Plaintiff] is incapable of working for a total of 8-hours during a workday. I find Dr. Yearwood's opinion in this regard to be contradicted

---

this statement, the court will briefly address the issue.

7

by his opinion that, while work activity may result in some increased fatigue, it would not prevent adequate functioning.

Tr. 34. Additionally, the ALJ explained,

Dr. Yearwood's opinions regarding pain lack persuasive weight; they are unsubstantiated by any clinical or laboratory findings and they are not accompanied by objective medical evidence. Indeed, a detailed review of his records does not indicate a single report of objective medical evidence. Indeed, a detailed review of his records does not indicate a single report of objective diagnostic testing. Nor do the records reveal a single notation reflecting the actual observation of an objective sign during physical examination. Moreover, Dr. Yearwood's assessments regarding pain are inconsistent with his physical capacities evaluation and the claimant's relatively frequent reports of no pain appearing in his records. They are entirely inconsistent with the observations of both the physicians who performed detailed consultative evaluations of the claimant, and they are inconsistent with the results of objective radiographic studies performed at the time of the second consultative examination, discussed below. In short, it appears that the opinions expressed by Dr. Yearwood regarding pain are likely based entirely on the reports of the claimant.

Tr. 35. Thus, the ALJ articulated "good cause" for the rejection of Dr. Yearwood's statements—that the opinion was not bolstered by the evidence, evidence supported a contrary finding, and the opinion was conclusory—and that rejection is supported by substantial evidence.

To the extent that Plaintiff is arguing that the mental RFC findings were flawed because the ALJ did not "state with particularity the amount of time a [p]laintiff is to spend in each activity in total and at any one time," the court finds no merit in Plaintiff's argument. Pl.'s Br. (Doc. 13) at 9. In particular, Plaintiff complains that the ALJ's decision lacked the required specificity in two instances: when the ALJ gave a sit/stand

8

option for Plaintiff in the RFC without stating exact lengths of time for which Plaintiff can sit and stand and when the ALJ used the word "some" (a term not defined in the DOT) when stating Plaintiff has the ability to do "some pushing and pulling." *Id.* at 9-10. Plaintiff relies on SSR 83-12 and SSR 96-8p as authority for such a requirement. In response, Defendant states that "[Plaintiff] has not cited with specificity the portions of the rulings that provide the inconsistency." Def.'s Br. (Doc. 14) at 5 (citations omitted). The Commissioner could find no inconsistencies, and neither can the court.

Other courts have upheld RFCs including a sit/stand option and the use of a term undefined by the DOT. *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) (unpublished) ("Although the ALJ failed to specify the frequency that [plaintiff] needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at [plaintiff's] own volition. This implication satisfies [plaintiff's] needs.") (unpublished); *Emory v. Astrue*, 2013 WL 1010660, at *6 (N.D. Ga. Feb. 5, 2013) (remand was unwarranted when ALJ included a sit/stand option and used the term "repetitive" (a term undefined by the DOT) in RFC because it was apparent from the record that the ALJ was using the term "repetitively" interchangeably with the word "constantly," a term which is defined by the DOT). In this case, it is clear that the ALJ used the word "some" interchangeably with the word "occasional."[6] Neither the use

---

[6] In the RFC included in the decision, the ALJ stated that Plaintiff is capable of "some pushing and pulling of arm and/or leg controls." Tr. 26. However, at the hearing, when posing the hypothetical question to the VE using the same limitations as included in the RFC, the ALJ used

9

of the word "some," nor the ALJ's failure to specify an exact amount of time for sitting and standing, are reversible error.

### B.     *Consideration of Mental and Physical Conditions in Combination*

Plaintiff asserts that the ALJ's failure to consider physical and mental conditions in combination was in error. Specifically, the Plaintiff asserts that (1) "the ALJ did not adequately justify" why depression "should be relegated to a non[-]severe impairment characterized as mild"; and (2) the ALJ should have considered all of Plaintiff's medically determinable impairments of which we are aware, including the medically determinable impairments that are not "severe," when the ALJ assessed Plaintiff's RFC. Pl.'s Br. (Doc. 13) at 13.

In the first argument, Plaintiff asserts that the ALJ failed to adequately justify the determination that Plaintiff's alleged depression was non-severe. At Step 2 in the ALJ's evaluation process, the burden of proof rests with a plaintiff to establish the presence of specific severe impairments. *See Phillips*, 357 F.3d at 1237-39. An impairment is found to be severe only if it significantly limits a plaintiff's physical or mental ability to do basic work activities. 20 CFR 404.1520(c) ("*You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment . . . . ").

---

the word "occasional" in place of the word "some." Tr. 67-68. The court finds this sufficient to

In this case, the ALJ stated,

> Although an examining source has listed "depression" as an impression, I find depression to be non-severe, based on the entirety of the relevant evidence, which is discussed in detail, below. I have considered the four broad functional areas set out in the disability regulations for evaluation mental disorders and in section 12.04 of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria. The first functional area is activities of daily living. In this area, the claimant has no limitation. The next functional area is social functioning. In this area, the claimant has mild limitation. The third functional area is concentration, persistence or pace. In this area, the claimant has no limitation. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation of extended duration. In reaching these conclusions, I have adopted the findings of a State Agency consulting psychologist. See the discussion below. Because claimant's "depression" causes no more than a "mild" limitation in any of the first three areas and "no" episodes of decompensation of extended duration in the fourth area, it is nonsevere.

Tr. 26 (citations omitted). Further in the decision, the ALJ explained,

> Based on my detailed review of the entirety of the evidence, . . . I agree with the findings of Dr. Jackson and have determined that, although depression is a "medically determined" mental impairment, the claimant has failed to carry his burden of showing that the alleged depression is "severe" as that term is defined by the regulations.

Tr. 31. The court finds that the ALJ did adequately justify why Plaintiff's alleged depression was found to be mild and non-severe.

In the final argument, Plaintiff asserts that the ALJ should have considered Plaintiff's depression in conjunction with his other medically determinable impairments when the ALJ assessed Plaintiff's RFC. Pl.'s Br. (Doc. 13) at 12. Plaintiff properly

---

show that the ALJ was using the word "some" interchangeably with the word "occasional."

states that an ALJ must "consider all of [a plaintiff's] medically determinable impairments of which [the ALJ is] aware, including [the] medically determinable impairments (MDI) that are not 'severe,' when [the ALJ] assess[es] [a plaintiff's] [RFC]." *Id.* (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). However, the ALJ did consider Plaintiff's alleged depression and its effect on Plaintiff's ability to work when discussing the RFC. Specifically, as Defendant points out, "[t]he ALJ specifically noted that she had to consider Plaintiff's impairments in combination at steps two and three of the sequential evaluation in determining residual functional capacity." Def.'s Br. (Doc. 14) at 9 (citing Tr. 23). Additionally, none of the physician's in this case opined that Plaintiff suffered from any mental limitation that affected his ability to work. In the ALJ's explanation of the RFC, the ALJ found Plaintiff's allegations of depression to be lacking credibility completely, highlighting at least four examples of Plaintiff having visited his treating physician without reporting any symptoms of depression. The ALJ further explained his reasoning for not finding the depression to effect the RFC by stating,

> I find it somewhat implausible that claimant could be in the depressive state (for years), as alleged and reported to Dr. Kirkland, and never have reported the condition to his treating physician. I also find it implausible that he could have been (or presently could be) in such a condition and not even try to access one of the *many* free, public, mental health clinics located throughout the state. Finally, I would note that, although requested to identify every condition that interfered with his ability to work during the hearing, the claimant did not mention or refer to depression or any other mental condition.

Tr. 31.  The court finds that the ALJ did consider the Plaintiff's alleged depression when assessing Plaintiff's RFC.  The ALJ's decision was supported by substantial evidence and thus no error has occurred here.

## VI.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 21st day of January, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE